In re THE ADMINISTRATION OF THE ESTATE OF THOMAS B. WALLACE, Deceased.

(Filed 12 June, 1929.)

1. **Descent and Distribution B b—Statute legitimizing child upon marriage of parents is retroactive and gives such child right to inherit.**

The provisions of C. S., 279, are retroactive as well as prospective in effect, and a child born out of wedlock whose mother marries his reputed father prior to the enactment of the statute is the heir of his parents who die subsequent to its enactment.

2. **Same—Statute legitimizing child strictly construed.**

C. S., 279, declaring legitimate a child born out of wedlock whose reputed father subsequently marries his mother is strictly construed as being in derogation of the common law.

3. **Same — Statute legitimizing child does not give it right to inherit through deceased parents.**

The provisions of C. S., 279, legitimizing a child born out of wedlock when his reputed father subsequently marries his mother for the purpose of inheritance from its father and mother does not extend to such inheritance from his maternal uncle dying intestate after the death of his mother through whom he claims as next of kin.

4. **Descent and Distribution B c—Where niece is one of the next of kin of intestate and survives him, her husband is entitled to distribution.**

The estate of the intestate descends to his surviving brother and the children of his deceased brother living at his death, who are entitled to the distribution of the estate as his next of kin, C. S., 137(5), as also the husband of a deceased niece who was living at the death of the intestate, under the facts of this case.

Appeal by respondent, Oscar Wallace, from Stack, J., at April Term, 1929, of Mecklenburg. Affirmed.

This is a proceeding instituted by the administrator of Thomas B. Wallace, deceased, for a final accounting and settlement of his estate.

The proceeding was begun by petition filed by said administrator against all persons interested in the due administration of the estate, and was heard by the judge of the Superior Court, in term time. C. S., 152.

After the payment of all claims against the estate, there is now in the hands of the petitioner, as administrator of Thomas B. Wallace, for distribution among the persons entitled thereto, the sum of $1,899.95.

From judgment that respondent, Oscar Wallace, is not entitled to any part of said sum, the said respondent appealed to the Supreme Court.

*Stewart, McRae & Bobbitt for C. B. Cross, as administrator and as one of the next of kin of Thomas B. Wallace, deceased.*

*Fred C. Hunter for the children of D. B. Cross, deceased, as next of kin of Thomas B. Wallace, deceased.*

*G. T. Carswell and Joe W. Ervin for respondent.*

CONNOR, J. Thomas B. Wallace died intestate on or about 1 July, 1927. At the date of his death, he was a resident of Mecklenburg County, North Carolina. The petitioner in this proceeding, C. B. Cross, was duly appointed by the clerk of the Superior Court of Mecklenburg County as administrator of the deceased. He has paid all the claims against said estate, and now has in hand for distribution among the persons entitled thereto, the sum of $1,899.50. All persons interested in the due administration of the estate of the said Thomas B. Wallace, have been made parties to this proceeding, which was instituted by the administrator pursuant to the provisions of C. S., 152.

The deceased, Thomas B. Wallace, left no widow or issue surviving him. He left one half-brother, C. B. Cross, and two nephews and one niece, the children of a half-brother, D. B. Cross, who predeceased him. His niece has since died intestate and without issue, leaving surviving her husband. The surviving brother and the children of the deceased brother, living at his death, were entitled to share in the distribution of his personal estate, as his next of kin; C. S., 137, subsec. 5. The husband of the deceased niece, who was living at the death of Thomas B. Wallace, is now entitled to the share in said estate of his deceased wife. C. S., 7.

The deceased, Thomas B. Wallace, had one sister, Bessie Wallace, who died intestate in 1914, leaving surviving one son, Oscar Wallace. At the date of his birth, in 1889, the said Bessie Wallace, was unmarried. The said Oscar Wallace was a bastard child. In 1895, the said Bessie Wallace was married to Charley Edwards.

Oscar Wallace alleged and offered evidence tending to show that Charley Edwards, with whom his mother intermarried, subsequent to his birth, was his reputed father. He contended that from the date of said marriage he has been and is now legitimate in all respects, and that he is, therefore, one of the next of kin of his maternal uncle, Thomas B. Wallace, deceased, and entitled to share with C. B. Cross, and

the children of D. B. Cross, deceased, in the distribution of the sum of money now in the hands of the petitioner.

The court was of opinion, that, as a matter of law, conceding that Charley Edwards was the reputed father of Oscar Wallace, as he alleged and offered to prove, and that under the provisions of C. S., 279, Oscar Wallace was legitimate from and after the date of the marriage of his mother to Charley Edwards, and therefore entitled to all the rights in and to the estate, real and personal, of his father and mother, that he would have had had he been born in lawful wedlock, the said Oscar Wallace is not one of the next of kin of Thomas B. Wallace, deceased, and is therefore not entitled to a share in the sum of money now in the hands of his administrator.

From judgment in accordance with this opinion, the respondent, Oscar Wallace, appealed to this Court, contending that there was error in the judgment.

To sustain his contention that at the death of Thomas B. Wallace, he was the legitimate son of Bessie Wallace, the sister of the deceased, and, therefore, one of his next of kin, the appellant, Oscar Wallace, relies upon the provisions of C. S., 279, which is as follows:

"When the mother of any bastard child and the reputed father of such child shall intermarry or shall have intermarried at any time after the birth of such child, the child shall in all respects after such intermarriage be deemed and held to be legitimate and entitled to all the rights in and to the estate, real and personal, of its father and mother that it would have had had it been born in lawful wedlock." (1917, ch. 219, sec. 1.)

This statute was enacted in 1917, subsequent to the marriage of Bessie Wallace, mother of Oscar Wallace, to Charley Edwards, in 1895, and also subsequent to her death in 1914; it was, however, in full force and effect at the death of Thomas B. Wallace in 1927. In *Stewart v. Stewart,* 195 N. C., 476, 142 S. E., 577, we said that the statute, by its express language, is retroactive as well as prospective. We held that a child born out of wedlock, whose mother had intermarried with his reputed father, prior to the enactment of the statute, was the heir of his father, who had died subsequent to its enactment.

The decision in *Stewart v. Stewart,* however, is not determinative of the question presented by this appeal, which is: Does a child born out of wedlock, who by virtue of the statute becomes legitimate upon the subsequent marriage of his mother to his reputed father, and therefore entitled to all the rights in and to the estate, real and personal, of its father and mother, that it would have had had it been born in lawful wedlock, also become an heir and one of the next of kin of a brother or sister of its father or mother, who has died without issue, subsequent to the death of the father or mother?

The answer to this question requires a construction of the statute. While it is provided that the child shall "in all respects be deemed and held to be legitimate," the result of the change in the status of the child, brought about by the marriage of its mother to its reputed father, is declared to be that it "shall be entitled to all the rights in and to the estate, real and personal, of its father and mother, that it would have had, had it been born in lawful wedlock." The statute provides for no other or further result; being in derogation of the common law, it should be construed strictly. We therefore hold that there is no error in the judgment. It is

Affirmed.